Good morning, may it please the court. My name is Becky Kiefer. I represent Appellant Suhair Khatib. I'd like to reserve four minutes for rebuttal. You have whatever time that shows on the clock. Thank you, Your Honor. The courthouse holding facility in which Mrs. Khatib was held clearly falls within Arlupa's definition of institution. She was confined behind bars in a secure detention facility that was designed for the purpose of holding pre-trial detainees and other inmates. The language of Arlupa contemplates a relatively simple inquiry to determining whether or not an institution falls under Arlupa. Namely, was the person confined in or confined to... Before you get to the discussion, I just want to make sure I have the facts clear in my mind. How did she wind up in that place? She was on probation, and part of her probation in her sentence was to complete community service. When it appeared that she was not going to be able to... Yeah, I'm not interested in the... I know she was under some suspicion of probation violation. She appeared in court, right? She appeared in court to ask for an extension. That's exactly right. Was she scheduled to appear in court, or she just showed up at the courthouse? That I don't know. I honestly don't know. She and her husband, right? They both were under this obligation to do this community service, and they somehow find themselves at the Orange County Courthouse wanting to get an extension. Correct. And the court revoked her and her husband's probation when she appeared in court that day, revoked her probation, put her in the courthouse holding facility in the courthouse. She was taken downstairs and put in custody. So she comes to court, and the judge says, I'm putting you under arrest. I'm revoking your probation. Take her into custody. You're being taken into custody right now. Yes. And so she travels from the courtroom to whatever this facility is. Yes, she was handcuffed in the courtroom, taken downstairs. The facility itself is in the downstairs part of the courthouse. Was she ever taken to jail? Well, this particular facility... I don't want to quibble about whether this is a jail or not. No, no, I know. I'm just saying, was she ever taken to Orange County Jail? No, no. The detention facility is in the courthouse itself that she was taken to. She was never taken from the courthouse. How long was she there, and what happened to her when she was no longer there? She was held in the facility in the courthouse for about eight hours. It was a full day. Then what happened? Then she was released. Into the community? Yes, with given credit for one day served in Orange County Jail and allowed an extended time to complete the community service. She was brought back to the courtroom for this, or she was just released? Well, she was taken down to the courthouse holding facility, brought back up to the courtroom, brought back down to the courthouse facility again, and then released directly from there. From the courtroom? From the holding facility. From the holding facility. Yes. So explain to me at which point her hijab? Hijab, yes. Thank you. Her hijab was taken from her, and where she was exposed without it? I just want to have the facts clear. No, I understand. She was handcuffed in the courtroom, taken down to this detention facility. She came to court wearing it. Yes, she wears a full hijab. It covers her head and her neck. She was taken down to the courthouse holding facility, and there is a booking counter type situation where the inmates are checked into that facility. When she was checked in, she was asked to remove her hijab at that time. Is this a sexually segregated facility? Yes. Well, yes. I mean, there are separate cells. There's a women's cell and there's a men's cell, which are actually right next to each other. So the intake is by a female officer? It was a male officer. So the intake is ambisexual. I mean, it's not sexually segregated. Right. It's just one booking counter. It was actually a male officer that asked her to remove the hijab. She tried to explain to him that she could not remove it in front of men that were outside of her immediate family and tried to explain that. He kept repeating to remove it. A female officer came over and told her, you know, I'm sorry, you have to remove it. So she was forced to remove it in front of male officers and male inmates because the actual men's cell is right there and it's all open. And what happened to the garment? The county took it. And she didn't see it again until she was released? Correct. It was not returned to her until she was released. So then she was in the cell and then taken to court without it. Yes. Appeared in court without it. Yes. And then was taken back down to the cell. Yes. And then eventually released and handed back her hijab. That's correct, Your Honor. Okay. I'm sorry. You may proceed now. Thank you. The language of ARLUPA, as I was saying, contemplates a relatively simple inquiry for determining whether or not a facility is or is not an institution. Namely, you look at the person. Was the person confined to or residing in a facility that is a jail, a correctional facility, or as most relevant here, a pretrial detention facility? The statutory language. Was she a pretrial detainee? She was not. No, but that's what this facility was designed for. Admittedly, it holds both. It holds some people who might be in the status of a pretrial detainee while they're waiting for their court appearance, but then they go back to their actual pretrial detention center, which would be like the MDC or some other place where they're held before they actually have their trial. There's been a probable cause hearing. They've been determined, for whatever reason, that they need to be detained pending the trial, and they're held there for extended periods of time. She was not in that status. Well, technically, no, she was not a pretrial detainee. Why did you say technically? The answer is just no. Lawyers always try to slide out from other things by saying technically and things like that. Okay, no. She was not a pretrial detainee. Pretrial detainees are held in that facility, and that is a facility. When you look at the purpose and the design of the facility, it was to hold pretrial detainees and others, others that are convicted. Short periods of time while they wait their turn to go up into the courthouse to have whatever proceeding may be going on. Right. We can see that the maximum that someone can be held in this particular facility would be 12 hours, but, again, when you look at the statute, there shouldn't be any focus on duration or feasibility of accommodating the religious beliefs at this juncture. Why not? Why not? Because there is a different these kinds of facilities are different in character than what we normally consider pretrial detention centers in that the influx and outflow of people is constant and unknowing. It's kind of a place where there's not a lot of control. People are brought in off the street. Warrants have been there, and then they're sent back out. Some are sentenced for further detention. Some are released the same day. And I gather there was a security concern with having her with the scarf inside of the facility. That was the reason. Was there a specific rule or regulation that has been invoked suggesting you can't have a scarf on your head in that facility? It's our understanding that the county has a policy. What she was told at the time and what we plead in the complaint is that she was told that she needed to remove her headscarf for security purposes, that it could be used as a choking weapon. Against her, possibly. Against her or other inmates. It's like removing shoelaces. Right, but other... I don't know if they still do that, but... Yeah, that's what she was told. But other people in the cell were, just to make a side point, other people in the cell were allowed to keep things like fishnet stockings and some other items that arguably still could be used as a choking weapon. Denial of equal protection. What if instead of being sent downstairs to the detention area, she had been told, as I saw happen hundreds and hundreds of times, go over and sit in that jury box, and we'll get to you later. So she went over into the jury box. Would that constitute an institution, as you're describing it to us? No. No. And here's why. The death initiative institution has two prongs. Was the person confined or residing? And is this a facility that is a jail correctional facility or a pretrial detention facility? The first focus would be on the person. Was that person confined? If you were told to go sit in the jury box... There's a marshal right next to you. Right, you're not free to leave. Okay, you're confined. But is that a facility that is a jail correctional facility or pretrial? What's the real difference between that and downstairs? Downstairs is a structural facility that was constructed for the purpose of holding inmates, pretrial detainees, and other inmates. It's a secure detention facility that has locked cells that holds inmates and others. The language of our LUPA describes institutions by listing types of institutions, jails, correctional facilities, prisons, pretrial detention facilities. Courthouses? It does not list courthouses. No. Is that of any significance? I don't think so. This is clearly a pretrial detention facility. It was designed for that purpose. You keep saying clearly. That's the issue. That's the issue. That's what we're deciding. You can't say clearly. Except clearly. We believe it is. Technically. I didn't say technically. But you believe. It's a structural facility that was designed for the purpose of holding inmates. This isn't one of those cases where you just go look up the ordinary meaning in Webster's Dictionary of these words and then apply that. I mean, there's a whole purpose and context and structure and history behind this particular legislation that needs to be considered when we're interpreting it. Well, just going back, that brings me back to your question about duration and the county's suggestion that it has to be some type of residential facility. When you look at the language of the statute, it says confined to or residing in. So it contemplates something other than residence, whereas residence may suggest some type of. . . You know what? I'm going to give you a chance to answer the question you asked Judge Trott and see if you want to stick to your answer. So what if you're told go to the jury box? There's a deputy sheriff standing there, and either implicit or explicit, if you try to leave, you know, will physically restrain you.  I don't believe that's a facility or institution, and that's part of the definition of section 1997. It depends a little bit on what you consider to be the facility. If you consider the entire courthouse to be a facility rather than sort of the basement or the holding tank or whatever you call it, then the question becomes. . . We're not maintaining that the entire courthouse is the institution under our LUPA. We're maintaining that this particular facility that was built. . . The judge said you go over there and sit in the jury box. You're not free to leave. And by the way, take that funny headdress off in my courtroom. That would have been okay. I don't know if that would have been okay, but as far as whether it's an institution. . . I don't mean. . . It's not nice. No, no. I was not imitating it. I want to say. . . I'm just saying you take the position that that would not have been a violation of our LUPA. That would not fall under. . . That would not be an institution under our LUPA. That's not a facility or an institution, which is. . . The jury box, I would concede it's not. It's not a facility that was constructed. I gave you. . . No, I. . . Three chances. But just to make clear. . . What's the difference between that and downstairs, just because downstairs has bars? Well, it's. . . It's a separate facility in that it's part. . . Yes, it falls under the roof of the courthouse. But it was a facility that was constructed in the courthouse with cells and a booking counter as a secure detention facility within the courthouse. It's actually not a detention. . . See, I have a problem with the word detention. It's really kind of a waiting facility. I mean, these people are. . . You know, the ones that are in pretrial detention or other sorts of detention are detained elsewhere. They come to these particular facilities. And we had one down in Spring Street and also one. . . Actually, we had cells at Roybal where they overcrowd all these people. They'd just be sitting there waiting for their turn to go. They weren't really detained there. They were kind of waiting there for their turn to get before the judge. Just why I keep referring to it as a secure detention facility is how it was described by the county. Do they serve meals? I don't know. Usually brown bags with a sandwich and an orange, especially in Orange County. I don't know, Your Honor. We don't have a banana county, so. . . So you don't know about the serving of meals? I do not know. But again, just to. . . Just let me follow up on that. If you had been served. . . I think your client has dietary restrictions. I don't know. I don't know. She does. Okay. Religious dietary restrictions. Okay.  Yes. Yes. Well, just to go back to. . . I guess she doesn't have to eat. It's a 12-hour sickness. One could. . . Right, I. . . One could fast that long. Right. What about prayer obligations? Again, you know, this goes. . . I just want to make the point that if you do find that this is an institution, not all religious practice is automatically going to be accommodated. Why not? Don't you bring a truckload of problems in with it? Well, no, no. And this is a point I want to make is our LUPA. . . Only the scarf? No. Our LUPA provides for exactly the analysis that you're contemplating, like the practicality and the feasibility of accommodating all these various religious beliefs. But it does so at a later stage where it allows the county to defeat Mrs. Khatib's claim by demonstrating that there's some compelling governmental interest for its policy and that it's the least restrictive means of doing that. So our LUPA does provide for exactly the analysis that you're engaging in, but not in addressing this threshold issue of just whether or not this facility is or is not an institution under our LUPA. But did she exhaust her administrative remedies? No, but if you bring an our LUPA claim at the time you're not incarcerated, the PLRA's exhaustion of remedies requirement, the circuits that have addressed it have found that that doesn't apply, that you look at the . . . For the PLRA to apply, you have to be a prisoner in a jail correctional facility or prison. Were there any administrative remedies that could have been exhausted? I don't know. I just know that if you bring the our LUPA claim when you're not incarcerated, those exhaustion requirements do not apply. So she didn't have to exhaust any administrative remedies. So if you were to prevail here today, what happens next with this case? Track it through for me. Well, we would ask that you reverse and essentially deny the county's motion to dismiss, and we would proceed with the balance of the case. If the county would like to bring a motion for summary judgment on some of the issues you've raised, such as substantial burden and those issues, it would proceed that way. Whether or not the scarf is a weapon and all the rest of that kind of stuff. Right, whether they had a compelling governmental interest. That comes into that prong. That's just the point I wanted to make, is the statute does contemplate all the various issues that you've raised, like the practicality and the feasibility, just not at this threshold stage. I mean, it's just the statute lists types of institutions very generic, as one of the court explained when they, I believe it was the Witski Court, said when a statute uses other correctional facilities. This went out on a 12B-6. Correct. Thank you. Thank you very much. We'll hear from the Orange Council. Good morning, Your Honors. David Lawrence on behalf of Appellees Orange County, Appendix Cozart, and Corona. I think the questions that Your Honors have asked are right on the point, whether or not. We're about to ask you some questions that are also going to be on point. Okay, I expect. Not nearly as helpful to your side. Okay. Let's say we're drafting the statute and we're sitting here in a markup, you know, committee markup, and somebody says, hey, the statute that's written doesn't cover this facility that I know about in Orange County that is in the courthouse and has bars and has people with guns and, you know, officers bringing people there with handcuffs and taking them to court and bringing them back. And I'm just not sure, Mr. Chairman, that this language covers it. And I would like to add some language to make it really clear that that kind of facility is covered. What would you add to the statutory language to make sure that that's covered? One thing you could do is make the definition under 42 U.S.C. section 1997E, which is the statute that was referenced by appellant in their briefs, which says any jail, prison, or correctional facility, and in fact the case is cited by appellant, specifically the Alexander case. I am not sure what your answer is. You've sort of trailed off and now you're citing me cases. Give me language. Tell me how to change the statute to make it do what you think it does now do. Okay. You can then give me an explanation as to where you come up with this language, but you got the language in front of you? You got the statute in front of you? I did. Well, good. Well, look at it. I'm looking at it. I see the definition here. It says a jail, prison, or other correctional facility, and there's double I and then triple I is a pretrial detention facility. Okay. And therefore, juveniles and housing. Okay. So what would you add? How would you change this language to make it abundantly clear that this kind of facility is covered? Well, I suppose you could exclude court-holding cells and it's... He wants to cover it. I want to cover it. So you would include court-holding. Include court-holding cells, okay, where the detention exists for more than two hours or something like that. So give me the language. I'm asking you for a drafting suggestion. Okay. So what would you add? And where would you add it? I would say any facility where an arrestee is confined and no longer in the immediate custody of the arresting officers and has been placed in a facility that is intended to confine that person prior to or during judicial relief. You would add all of that to the statute? I think that this court-holding facility kind of works. Or maybe you could add a duration limit. You could add court-holding facility. But I think the problem is... What is this facility that we're talking about? What it is is what the appellant referred to in the First Amendment complaint. It's basically some holding cells. It's a holding facility. And the First Amendment complaint refers to it over and over again as a holding cell and a holding facility. Now, RLUIPA really was intended to address, I think, confinement over a longer period of time, where, as Judge Carter used the word, homeostasis. And I had to go to Wikipedia last night to make sure I understood what he was talking about. But I think he was right on the money. And that's the situation. The definition is the property of a system that regulates its internal environment and tends to maintain a stable, constant condition. Now, the holding cells at the jails, as Your Honors have suggested, accommodate a variety of circumstances. They accommodate pretrial detainees that are brought over from the jail, for instance. Why isn't that the end of the case? I'm sorry? Why isn't that the end of the case? If it maintains people for pretrial purposes, why isn't that then a pretrial detention facility? And if you happen to land in there for reasons other than pretrial, it doesn't matter, because it's not defined by who you are, but the kind of facility it is. And once you say it's a facility where they hold people for pretrial detention, why isn't that the end of the game? Because there are a variety of circumstances that meet those requirements that clearly would not fall within the intention of the statute. For instance, is the vehicle that transports the inmate from the jail to the courthouse a pretrial facility? Is a police car that contains an arrestee who is going to be prosecuted a pretrial facility? Are any number of these others? You tell me. No. Well, if it's not, then you don't have a problem. This clearly is a pretrial detention facility. This is a facility that you have said people are detained while awaiting trial. I mean, you said that. I didn't say that. Now, you might say the police car is or is not. We can talk about whether transportation facilities are also detention facilities. I don't know. We could talk about that, but it doesn't really matter whether those things are. What matters is that this thing, in fact, unequivocally is. This is where they hold people for pretrial detention. That's one of the purposes of it. It doesn't matter, does it? It doesn't have to be exclusively for that. Jails are also places where people are held for civil contempt. They haven't even committed a crime. If the judge says you're on civil contempt until you purge yourself, they take you down to jail. Right. You have no criminal record. Right. There's no trial pending. There's nothing. I think the reason that the pretrial detention facility was mentioned in the statute is that, as we all know, many people who are pending trial are in custody for extended periods of time. And that is a circumstance in which a person is susceptible to having his or her religious beliefs substantially imposed upon. Can you point to anything in the legislative history that would help us? We cited some comments, I believe, by Senators Hatch and Kennedy in our brief. And actually, Judge Carter, in his opinion, refers to those same comments in the legislative history. Now, I'm sorry I don't have the page citation, but Judge Carter does refer to it in his opinion, which is in the excerpt. And what do Senators Kennedy and Hatch tell us? They were talking about the purpose of the statute, which was to allow or to preclude persons who are subject to extended detentions who reside. Is that the language they use, persons who are subject to extended detentions? I can't say that's the exact wording, no. And I should. Why don't you find it? I will. Here it is. Where is it? It is on the excerpt of the record at pages 12 and 13. Okay, I'm there. At the bottom of page 10. 12 and 13. Yes, of the excerpts of record. ER 12, ER 13, but it's page 10 of the opinion of Judge Carter. Correct. Okay. Okay? I apologize. ER 12 and ER 13. Okay, go ahead. Okay. Senator Kennedy discounted fears of frivolous prison suits as follows. Congress has passed the PLRA, which includes a number of procedural rules to limit frivolous prisoner litigation. Those procedural rules will apply in cases brought under the bill we are introducing today. Based upon these protections and the data on prison litigation, it is clear that this provision in our bill will not lead to a flood of frivolous lawsuits or threaten the safety, order, or discipline of correctional facilities. Okay. So what does that do to help you? Well, Judge Carter goes on to state, to apply a loop at the courthouse holding facilities where the requirements of the PLRA are not clearly applicable would make frivolous religious litigation a real possibility. So there's nothing that Senator Kennedy or Hatch said that helps you at all. Well, they didn't do it. This is Judge Carter's judgment that interpreting a statute to mean what it says will lead to a bunch of what Judge Carter thinks is frivolous litigation. That's correct. That's really nothing attributed to either Senator Kennedy or Hatch. Well, I think we also have to look at the facts. Senator Kennedy or Hatch say anything like we don't want to include court holding tanks or this has got to be a facility where they are at least overnight or for a long-term period? Did they say anything like that? To my knowledge, there's no discussion in the congressional history about the length of confinement. So even assuming that we can look at statutory legislative history where the language is clear, you don't have anything in the legislative history that would militate against construing the statute exactly as written. Well, I think there is. And I think that lies in the fact that the statute referred to 42 U.S.C. section 1997 as opposed to 1997E as the definition for prison, jail, or other correctional facility. And again, the cases cited by appellant refer to 1997E, which is not what we're talking about here. And they said any jail, prison, or other correctional facility. The statute that we're looking at here says jail, prison, or correctional facility and then goes on to define them. So it rises or falls based on the presence or absence of the word any? Well, the cases cited by appellant say the any clearly evidenced the intent of Congress to define jail, prison, or other correctional facility expansively. And they compare it to 1997. And it's more expansive than the definition of jail, prison, or correctional facility under section 1997. It strikes me as dancing on the head of a pin. A jail or any jail. Well, that's how those cases were resolved. Where does the language about the pretrial detention facility come from? That is part. You're talking about the jail provision. There's a separate provision dealing with pretrial detention facility. Sure. You say that doesn't apply? No, it applies. So why do you keep talking about jail? Let's give it to you. It's not a jail. It's not. Fine. Let's give you that argument. What I'm talking about is how do you get around the clear language that says you don't disagree that a pretrial detention facility, whatever it is, is covered. Correct. I agree with that. So if it's a pretrial detention facility, then it is covered. And anybody in it is covered. Right. Okay. So what is a pretrial detention facility in your view if it's not the jail and it's not the holding tank in the court? What language, what purpose does that language serve in your interpretation of the statute? I think what pretrial detention facility envisioned was a facility in which someone who has been arrested will spend a significant period of time. You know, I don't want you to give me a theoretical answer. Give me a place. Give me, you know, tell me what it is, an address if possible. So it's not this facility in the basement of the courthouse, you say. Okay. No, no, not okay. That's what you say. I'm just trying to characterize what you think it's not. Right. Okay. And it's not Orange County Jail. There is such a thing as Orange County Jail, I gather. Correct. I mean, I don't know what it's called, but you know what I'm talking about. Sure. There is the Orange County Jail with various facilities. Right. So it's not there because that is covered by jail, prison, or other correctional facility, right? Right. Okay. So where is this place that is covered by double I, a pretrial detention facility? If it's not the holding tank in the courthouse and it's not the jail, Orange County Jail, where is this in Orange County? Does Orange County have such a facility? I did not say it wasn't the Orange County Jail. The Orange County Jail is a pretrial detention facility. Is there anything else in Orange County that functions as a pretrial detention facility that's not the Orange County Jail? Is there an honor rancho? I mean, L.A. County Jail has all kinds of things around. Well, sure. The Orange County Jail has various facilities. Right. I'm sorry. If you understand me correctly, then a pretrial detention facility, in your judgment, is subsumed in the prior phrase, the one that talks about jail. It has no independent meaning anywhere in America. Well, no. Counsel, there are some documents in the record that explicitly answer these questions. I think that your opposing counsel is actually the one who placed them in the record, that there is the state of Orange County Jails and programs and all sorts of descriptions about justice centers. And I don't mean to be helping you out, but I do think that. Right. I would appreciate any help Your Honor could give me. What I'm saying is there are answers to the questions. They probably know the answers to the questions, but you need to know the answers to the questions. I should know the answers to the questions. And I suppose they could include facilities that are providing drug treatment pending trial. You know, I don't want to suppose from you, okay, now that you've been given a hint as to where to look, I would like an answer. Okay. It is or it isn't. Or I don't know. If your answer is I don't know, that's fine. But my problem is I'm interpreting the statutory language and I have to give it meaning. Okay. And you can either take the position that pretrial detention facility is something that's entirely subsumed within jail, it has no independent meaning, or you can point out to me to something what you think is covered by that language and is not a jail, a prison, or other correctional facility. And if so, I'd like you to give me an example and I would like a description of what it is and I'd like to see how it differs from those other facilities so we can actually discuss a concrete example. Here's what I would say. Go ahead. When it says pretrial detention facility, I think it means a pretrial detention facility, not something which may function as that and a variety of other things. No, I understand that's what you mean. I want an example. I want an actual facility, something that in Orange County or anywhere else in California or in America,  that's neither a jail nor a holding tank in a courthouse, but it's something else. And I'd like you to be specific what it is so we can talk about it. I can ask you questions like, do they, for example, have guards at the doors? Do they let people in? You know, I can ask you specific questions about it. You don't have to guess. You can tell me, no, this is how it operates. So what is this animal? Let's take an example. You answer my question and then we'll take your example next time. Okay, all right. Why don't you just answer my question. What is an example of a pretrial detention facility that is not a jail, a prison, or other correctional facility? If you're asking me to point to a place and give you the name and that, I cannot do that right now. I can give you what I think might be an example, for instance. Let's say a county has female inmates who are pregnant and they want to segregate them and place them in a facility that is not officially part of the jail, but they are pending, those are people who are pending trial. That would be a pretrial detention facility. That's an example. I think there could be many others. I'm sorry, so this would be a facility where pregnant inmates awaiting trial are held, but not pregnant inmates who are serving sentences. Well, that would be a correctional facility. No, no, I'm just saying, so you're only holding pregnant females awaiting trial, but any other pregnant females who are serving jail terms are not held there. That's your example? You could have that. I'm just trying to figure out what you're trying to tell me. Is that your example? That's my example. Is it such an animal? I don't know, but I can imagine that there is. Well, anybody can imagine anything. I mean, how about the hospital? There are an awful lot of people held in hospitals pending trial. How about the Metropolitan Detention Center? The Metropolitan Detention Center? MDC. It's right downtown next to the Roybal Building. You mean the federal facility? Right. What is that? That's a pretrial detention center, right? Right. It's also a prison. People serve their time there. They don't have to be one or the other. I mean, the statute provides it can be a jail. But that's a very good point. I mean, if something is both, then it's both. So that means it's doubly covered. I don't see how you get out of something by saying, oh, well, this is two things. Well, I think you have to look at the purpose of the statute. And I really think that when you have a facility where a person is going to be there at most for 12 hours, are you going to apply all of the requirements of RLUIPA? And I think the answer is no. Because? Because you have so many different kinds of individuals coming in there, some of whom are awaiting trial. But when they go back to the jail, for instance, they are subject to RLUIPA, and the jail has to comply with that. What's the practical implication of a ruling that would go against you? The practical implication is imposing a variety of requirements upon limited staff at these holding cells, to accommodate inmates who have not been interviewed, classified. You know, that whole booking process where we acquire that information about an inmate and what is required for them happens at the jail and is a lengthy process. That can't happen at a holding cell. I don't understand the problem. It's one thing if they have done it inadvertently, but she tells them. She says, look, this is my religious requirement. So it's not like they have to guess. It's not like, oh, my God, we took this away from her. We had no idea. We didn't debrief her. Her case is that she goes down there. She says, listen, I'm wearing something. It's pretty obviously a religious garment. You and I know this. I mean, we've seen it on television. It's not really a mystery. And she then says, look, I'm not wearing this to keep the cold out. It's something that's religiously required. They say, well, too bad. The lady in the fishnet stockings could say, I'm a pagan Wiccan, and do the deputies have to make that determination at that time and say, well, this is part of the practice of a pagan? I mean, it really requires more than simple observation by deputies who are overwhelmed in dealing with a variety of detainees. Overwhelmed. Okay. Okay. I think we asked you tough enough questions. I think you did, and I appreciate the help that I received in the process. Thank you. Thanks to both counsel. I thought I'd give her another minute because we did go over that. Would you like to take a minute? I would actually just like to respond to four things that you raised with opposing counsel. Fifteen seconds each. Okay. Legislative history, yes, the term reside was used in passing when Senators Hatch and Kennedy were discussing the statute. It did use reside. The reason I don't have the legislative history, I plan on looking at it to see. Because we don't look at legislative history. Because we do. Because we don't have the beauty. Which we quote from you. When it works for you, you use it. When it doesn't work for you, you cite Scalia. Just a quick. My law clerks won't let me. They won't show it to me. My law clerks don't let me cite Scalia. So they did use reside. Well, when they were talking about facilities, yes, it was used in passing. But when you look. In passing. Yes. It was used. But when you look at the language of the statute that was enacted, it uses residing in or confined to. It's a hospital in which somebody is held pending a trial, a pre-detention facility. Again, it would depend. There are many people who are sent to hospitals because they're banged up. Some to psychiatric wards. Correct. Are those facilities for pre-detention? It would depend. If it's something like the courthouse where the hospital constructs a wing that's a secure detention facility for the purpose of holding those types of inmates, yes, they're being detained in a. . . So it's not a jail anymore. It's a pre-detention facility. Just to make clear your answer. What you're saying is if somebody is bleeding in court and they rush them down to the emergency room, bleeding in court awaiting trial, your position is that the emergency room doesn't become a pre-trial detention facility. Pre-trial detention facility automatically because you have somebody there pre-trial. Is that your position? That's my position, yes. Is there a jail wing of the hospital in Orange County to which they send pre-trial detainees? I don't know. I don't know, Your Honor. Honestly, I don't know. But just to get back . . . Let's say there were. Okay. Imagine.  Right. And I would say that is very . . . Is there anything stored in the jail, too? It depends. It's USC, right? Yeah, well, there's . . . I haven't been over to those jails in a long time, but the women's jail is different from the men's jail, too. Assuming it's like the courthouse holding facility here where it's a facility constructed in the hospital for the purpose of holding inmates, yes, it could be a jail. Even though it's a hospital. It's in the hospital. It's a facility constructed in the hospital where people are confined to jail, correctional facility, or it could be . . . They don't call it a jail. They call it a pre-detention facility. It's still a jail? I think it's both. Like you said, it doesn't have to be one or the other. It's a jail. It's a pre-trial detention facility. But it's not the whole hospital. If you're just talking about someone in a regular hospital room where they maybe handcuff them to the bed, for example . . . Like law and order. That's usually what you're saying. That's where I've seen it. Again, Section 1997 has the component that it has to be a facility or an institution that is a jail, correctional facility, or pre-trial detention facility. And that's not a facility that was constructed for the purpose of holding inmates or pre-trial detainees. Whereas, like the courthouse holding facility or a wing in a hospital that is constructed with locked facilities, it's a secure detention facility within the hospital. That facility itself would be an institution. Yes. Second, the analysis that the county was engaging in . . . Again, our LUPA provides for that analysis of feasibility of accommodating all religious practice. When you get to the later prongs, where they have to demonstrate their compelling governmental interests and that it's the least restrictive means. So, our LUPA contemplates that analysis, but just not at this threshold inquiry. And third, just to explain 1997E versus 1997, our LUPA adopts the definition used in 42 U.S.C. 1997. And that uses the phrase, a jail, correctional facility, or prison. Whereas, 1997E, which is the PLRA, uses any jail, prison, or correctional facility. We weren't aware of any cases defining that phrase under section 1997, but there are cases that interpret that phrase under 1997E. So, we cited those as being instructive. And finally, just to address the grand jury report that Judge Wardlaw was referring to . . . Did you submit that report? Yes, it's at ER 95. And I just wanted to make the point that that's a report prepared by the Orange County Grand Jury, where it describes the court holding facility as a secure detention facility located within a court building used for the confinement of persons. That falls under pretrial detention facility, as used under our LUPA statute. Okay, thank you. The case has already been canceled. Thank counsel for a fine argument. We will take a short break before the next case.
judges: Kozinski, Trott, Wardlaw